UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LANDIS DOMINO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-870** |
| **N. BURL CAIN, WARDEN** | **SECTION "R"(3)** |

**REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1] For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

I.   *Procedural and Factual History*

Petitioner, Landis Domino, is a state prisoner incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana. On January 9, 2013, he pleaded guilty to two charges: (1) possession of marijuana with intent to distribute; and (2) possession of drug

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, or that the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

paraphernalia.[2]  He also entered a plea of *nolo contendere* to a third charge of possession of a firearm by a convicted felon.[3]

On April 23, 2013, Domino timely filed an application for post-conviction relief in the Criminal District Court for Orleans Parish where he had entered his guilty plea.[4]  In his application, he asserted two claims: (1) insufficient evidence to support his conviction, and (2) ineffective assistance of counsel.[5]  On May 7, 2013, the district court denied his application, simply stating that "Defendant's claims are not supported by the record."[6]  Domino then appealed to the Fourth Circuit Court of Appeal, on May 28, 2013, asserting the same claims.[7]  The Fourth Circuit denied the application, finding no error in the trial court's denial, on June 13, 2013.[8]  Upon his further application to the Supreme Court, that court also denied his writ, on February 28, 2014.[9]

On or about March 20, 2013, Domino filed a petition for federal *habeas corpus* relief.[10]  In his federal petition he asserts three claims: (1) ineffective assistance of counsel; (2) illegal search and seizure, (3) invalid indictment.  The State concedes that the

---

[2] State Rec., Vol. 1 of 2, Bill of Information, 4/25/12; State Rec., Vol. 1 of 2, Waiver of Constitutional Rights, Plea of Guilty, 1/9/13.
[3] *Id.*
[4] State Rec., Vol. 1of 2, Uniform Application for Post-Conviction Relief, 4/23/13.
[5] *Id.*
[6] State Rec., Vol. 1 of 2, Judgment, 5/7/13.
[7] State Rec., Vol. 2 of 2, Writ Application to the Fourth Circuit, 2013-K-0749, 5/28/13.
[8] State Rec., Vol. 2 of 2, Fourth Circuit Order, 2013-K-0749, 6/13/13.
[9] State Rec., Vol. 2 of 2, Supreme Court Order, 2013-KH-1891; *State ex rel. Domino v. State*, 2013-1891 (La. 2/28/14), 134 So. 3d 1172.
[10] Rec. Doc. 1, Petition.

application is timely, however argues that petitioner has failed to exhaust his remedies in the state courts, and as a result, his claims are "technically procedurally defaulted."[11] Furthermore, the state argues that the "invalid indictment" claim is neither exhausted because petitioner failed to raise it in his prior convictions, nor a cognizable claim for *habeas* review.[12]

The State's procedural default argument rests on its assertion that Domino's writ application to the Supreme Court was not timely filed within the thirty day period after the Fourth Circuit denied his writ on June 13, 2013, as required under Louisiana Supreme Court Rule X.[13] The State contends that his writ was not timely filed because although his certificate of service on the application bears the date of July 5, 2013,[14] the verification on the filing sheet bears the date of August 1, 2013.[15] Thus, the State concludes that Domino could not have delivered the application to the prison authorities prior to August 1, 2013. Under Louisiana's "mailbox rule," a Louisiana state court filing is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d

---

[11] Rec. Doc. 22, State's Response, p. 6-8. A federal habeas claim is procedurally defaulted if the "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted). Here, if Domino missed the filing time for his writ application to the Supreme Court, it would be time-barred, which would act as a procedural bar for that application and any successive petition.
[12] *Id.* at 9-10.
[13] *Id.* at 6-8.
[14] State Rec., Vol. 2 of 2, Writ Application to the Louisiana Supreme Court, 7/5/13.
[15] State Rec., Vol. 2 of 2, Writ Application Filing Sheet, 8/1/13.

601, 607 (5th Cir. 2006).  However, the court here notes that the State has no objective proof that the application was not delivered prior to July 13, 2013—rather there is conflicting evidence as to when the petition was finished,[16] and thus it could have been delivered to prison authorities within the proper time limit.  Furthermore, the Supreme Court denied the writ without stated reasons—and thus made no express judgment as to its timeliness.[17]  Therefore, out of an abundance of caution, this court declines to decide this petition on the uncertain procedural grounds urged by the State and turns instead to the merits.

## II.    *Standards of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

---

[16] As noted above, the certificate of service on the application bears the date of July 5, 2013, which is within the July 13, 2013 deadline.  *See* State Rec., Vol. 2 of 2, Writ Application to the Louisiana Supreme Court, 7/5/13.  The verification on the filing sheet bears a date of August 1, 2013, which is not within the same deadline.  *See* State Rec., Vol. 2 of 2, Writ Application Filing Sheet, 8/1/13.  These are the conflicting dates the court declines to resolve in favor of the State.

[17] State Rec., Vol. 2 of 2, Supreme Court Order, 2013-KH-1891; *State ex rel. Domino v. State*, 2013-1891 (La. 2/28/14), 134 So. 3d 1172.

to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1) ] have independent meaning." *Bell*, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that

5

are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

*Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

*Id.* (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant

habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–87, 178 L.Ed.2d 624 (2011) (citations omitted; emphasis added); see also *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866, 176 L.Ed.2d 678 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

### III.     *Petitioner's Claims*

#### 1.  Invalid indictment and illegal search and seizure claims

First, the State argues that the invalid indictment claim is not cognizable on habeas review, nor is it exhausted because Domino failed to raise it in his state post-conviction relief petitions.  However, while Domino raises three claims in his federal petition, and only raised two claims in his state post-conviction relief petitions, it is clear that his claims for both illegal search and seizure and invalid indictment before this court are the same claims he presented to the state court under the label of "insufficient evidence."  It is evident from his federal petition—which closely mirrors his state court petition—that his arguments have not substantively changed; he has just relabeled the claims.  Pro se *habeas corpus* petitions must be construed liberally.  *U.S. v. Woods*, 870 F.3d 285, 288 n.3 (5th Cir. 1989) (citing *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988)).  In doing so, this court rejects the State's assertion that these claims have not been exhausted because it is clear that Domino is making the same arguments in his federal application that he made before the state courts.

Nonetheless, construing the claims broadly, they still fail on their own merits.  Domino argues that his arrest was invalid because he was subjected to a warrantless arrest, after the police had searched his home pursuant to a search warrant that he contends was invalid.[18]  In raising this claim to the state courts, Domino argued that this

---

[18] Rec. Doc. 1-1, Memorandum in support, p. 4-5.

led to the introduction of illegally obtained evidence which should have been suppressed.[19] Insofar as the argument rests on the Fourth Amendment violation itself, this argument must fail.  In cases where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a prisoner may not seek collateral review of that claim.  *Stone v. Powell*, 428 U.S. 465, 494 (1976).  In fact, "[t]he opportunity to present a fourth amendment claim to the state trial and appellate courts, *whether or not that opportunity is exercised or proves successful*, constitutes 'an opportunity for full and fair consideration' of a defendant's fourth amendment claim under *Stone* absent sufficient factual allegations and proof that the state process is 'routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on the merits.'"  *Smith v. Maggio*, 664 F.2d 109, 111 (5th Cir. 1981).

From the record, it is clear that Domino presented his search and seizure claims to the Louisiana state courts in an omnibus motion[20] and in his state post-conviction relief petitions.[21]  The motion to suppress was further subject to a preliminary hearing at which the state called a witness who was cross-examined and introduced evidence.[22]  It was after this hearing that the trial court denied Domino's motions to suppress and found sufficient

---

[19] State Rec., Vol. 2 of 2, Uniform Application for Post-Conviction Relief and Supporting Brief, 4/23/13.
[20] State Rec., Vol. 1 of 2, Omnibus Motion, 5/2/12; State Rec., Vol. 1 of 2, Minute Entry 5/2/12.
[21] State Rec., Vol. 2 of 2, Uniform application for Post-Conviction Relief, 4/23/13; State Rec., Vol. 2 of 2, Writ Application to the Fourth Circuit, 2013-K-0749, 5/28/13; State Rec., Vol. 2 of 2, Application for Writ of Certiorari, 2013-KH-1981, 7/5/13.
[22] State Rec., Vol. 1 of 2, Minute Entry, 10/17/12.

probable cause to substantiate the charges.[23] Thus, the state courts did give him an opportunity to be heard—and in fact he was heard—on these issues. Furthermore, if Domino had intended to preserve his argument for direct appeal, he could have done so by entering a conditional *Crosby*[24] plea, which allows a defendant to plead guilty while still pursuing an appeal of his pre-trial motions. However, he did not, and it is clear from the record that his pleas were entered unconditionally.[25]

Furthermore, insofar as the "invalid indictment"[26] claim is separate from the Fourth Amendment claim and based on an insufficiency of the evidence argument, it too must fail. Domino waived any claim challenging the sufficiency of the State's evidence by pleading guilty. In other words, "The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2790, 61 L.E.2d 560 (1979), mandate that sufficient evidence exist from which a rational fact finder could find guilt beyond a reasonable doubt is inapplicable to convictions based on a guilty plea." *Smith v. McCotter*, 786 F.2d 697, 702-03 (5th Cir. 1986). *See also Cornett v. Johnson*, No. 97-11250, 1998 WL 546513, at *1 (5th Cir. Aug. 12, 1998) ("[Petitioner's] challenge to the

---

[23] *Id.*
[24] *See State v. Crosby*, 338 So. 2d 584, 586 (La. 1976).
[25] State Rec., Vol. 1 of 2, Waiver of Constitutional Rights, Plea of Guilty, 1/9/13.
[26] While Domino asserts an "invalid indictment" claim, nowhere does he argue that the indictment itself is somehow defective. Rather, this argument is essentially based on what he contends is a lack of evidence, which relates to the illegal search and seizure claim, and the original insufficiency of the evidence claim he brought in his state court petition. The main point of his "invalid indictment" argument in his federal petition is that the police conducted the search of his home when he was not present, and never put him in "control or custody" of the contraband. Hence, the court does not address the indictment itself, which has not been challenged directly.

sufficiency of the evidence underlying his guilty plea does not rise to the level of a federal constitutional issue."); *United States v. Silva*, No. 97-010266, 1998 WL 29992, at *1 (5th Cir. Jan. 6, 19998) ("[Petitioner's] sufficiency-of-the-evidence challenge is also waived by his guilty plea."). Thus, when Domino entered his guilty plea, he waived his right to all claims of insufficient evidence. For these reasons, Domino is not entitled to *habeas* relief on these claims.

### 2. Ineffective assistance of counsel

Domino also claims that his trial counsel was ineffective. His claim rests on a variety of alleged pre-trial errors, without which Domino contends he would not have pleaded guilty. These errors include, among others: (1) failure to investigate various aspects of the case; (2) failure to file various motions; (3) failure to attack various evidence introduced by the state; (4) failure to introduce other evidence; and (5) failure to request a probable cause hearing.[27]

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was constitutionally deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980

---

[27] Rec. Doc. 1-1, Memorandum in support, p. 2-4.

F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (*quoting Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. More specifically, in order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case

12

involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see also James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995).

Ineffective assistance of counsel claims present a mixed question of law and fact; therefore, when the state courts have rejected such claims on the merits, a federal *habeas* court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of such ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself. A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general

the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, ––––, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 785–86, 178 L.Ed.2d 624 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so*. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Id.* at 788 (citations omitted; emphasis added). In the instant case it is clear that petitioner has not made the showing required to overcome these stringently deferential standards of

14

review. Though the state district court denied relief to Domino merely stating that the record does not support his claims,[28] it is clear from the record that even if he could show that his lawyer was ineffective,[29] he cannot show that he was prejudiced in entering the plea bargain—and rather, he did so voluntarily.

In fact, it is evident that Domino pleaded guilty because he was motivated to do so by his desire to avoid the harsher sentencing he may have faced as a convicted felon, and in light of the abundance of evidence the state could potentially present against him. The police report narrative best states the facts of the case, and an examination of the total record makes clear the choice confronting Domino. In relevant part, the Narrative states:

> Within 72 hours inclusive of Wednesday, February 22, 2012, NOPD Narcotics Detective Marcell Foxworth received information from a documented confidential informant, who on previous occasions has provided accurate

---

[28] State Rec., Vol. 1 of 2, Judgment, 5/7/13.

[29] Based on the record, it does not appear that the lawyer was ineffective—for example, he filed motions to suppress, did investigate the neighborhood and interview neighbors who stated that Domino did not sell drugs, and reviewed his work records. It is likely that the lawyer made a competent decision that after his investigation, it was still a more reasonable decision to enter a guilty plea in the face of all of the other incriminating evidence. *See McMann v. Richardson*, 397 U.S. 759, 770 ("That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing. Courts continue to have serious differences among themselves on the admissibility of evidence, both with respect to the proper standard by which the facts are to be judged and with respect to the application of that standard to particular facts. That this Court might hold a defendant's confession inadmissible in evidence, possibly by a divided vote, hardly justifies a conclusion that the defendant's attorney was incompetent or ineffective when he thought the admissibility of the confession sufficiently probable to advise a plea of guilty."). However, because this court does not reach the deficiency prong herein, resting its grounds instead on a lack of prejudice, it does not seek to address all of the issues raised by Domino regarding his lawyer's specific actions.

information in the past, which have led to numerous narcotics arrests (who will be referred to as CI). The CI stated that a black male known to the informant as "Domino", who sold marijuana, from the residence of 7829 Means Street.

Based on the information received from the informant as well as the controlled purchase from 7829 Means Street, it is the belief of the detective that marijuana, possibly a firearm (handgun) and the proceeds from the sales are still being secreted within the target location, 7829 Means Street. Therefore, Detective Foxworth respectfully requested that an order of search be made issued for that address.

With the armed information in hand, Detective Foxworth prepared a search warrant for 7829 Means Street of New Orleans, Louisiana. On Thursday, February 23rd, 2012 at approximately 2:30 P.M., Detective Foxworth relocated to the Criminal District Court and met with Honorable Magistrate Judge Gerald Hanson in order to have the warrant signed. After careful review, Judge Gerald Hanson signed the warrant. The time and date was noted to be February 23rd, 2012 at 3:00 P.M.

. . . .

Upon arrival at the target location, Detective Jason Cross, then knocked on the front door of the residence and announced "Police with a search warrant," and received no response from the interior of the residence. At that juncture, Detective Dewayne Bastian made forcible entry into the residence with the use of the "police ram." Detectives Foxworth, McGowan, Cross, Bastian, Stephens and Sergeant Rome along with police officers Hamilton and Carey cleared the residence for officer's safety. The following contingent of officers discovered that the target subject (Domino) was not present during the execution of the search warrant located at 7829 Means Street. While executing the search warrant, Detective Foxworth observed a black .45-Caliber Semi-automatic hi-point handgun, next to an air matterss on the floor of bedroom #1. Detective Foxworth further observed loose vegetable matter substance (marijuana), on a desk located in the living room area in plain view, Detective Foxworth notified Detectives McGowan and Williams of his discovery of the above listed contraband.[30]

---

[30] State Rec., Vol. 1 of 2, Narrative, 3/14/12.

16

After finding the handgun and the marijuana, yet not locating Domino himself, the police relocated to a nearby convenience store, where they had surveilled Domino several times. Upon reading him his *Miranda* rights and placing him under arrest, the police conducted a search incident to his arrest. The search turned up a clear plastic bag containing six individual plastic bags with marijuana in Domino's front right pants pocket. The police then took Domino back to his residence at 7829 Means Street, where he waited while they completed their search. During this time, Domino informed the police that there was additional marijuana in the second bedroom. Police found multiple containers and plastic bags containing marijuana, and a digital scale, as well as two grinders.[31]

In addition to the facts recited above from the record, Domino made a voluntary statement to the police regarding the firearm, stating that his family gave it to him as a means of protection because he lived in a dangerous neighborhood.[32] While Domino argues that his lawyer's alleged errors motivated his guilty plea, the court finds that his argument lacks credibility in light of the record before it. Rather, Domino was apparently motivated by his desire to avoid a potentially harsher sentence. It is clear that a guilty plea is not invalid solely because the decision to plead guilty was "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty

---

[31] *Id.*
[32] State Rec., Vol. 1 of 2, Voluntary Statement form, 2/27/12, p. 2.

authorized by law for the crime charged." *Brady v. United States*, 397 U.S. 742, 751 (1970).

As the United States Supreme Court has noted:

> The plea bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights, but we have repeatedly held that the government may encourage a guilty plea by offering substantial benefits in return for the plea. While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas.

*United States v. Mezzanatto*, 513 U.S. 196, 209-10 (1995) (quotation marks, brackets, and citations omitted).

In this situation, Domino faced a choice. Under Louisiana law, based on the three charges that he faced, he could potentially have been sentenced to serve over fifty years in prison. First, for his possession of marijuana with intent to distribute charge, he faced a minimum of five years and maximum of thirty.[33] Second, for his possession of a firearm as a convicted felon charge, he faced at least ten and a maximum of twenty years.[34] Finally, he faced up to six months on his drug paraphernalia charge.[35] If at trial he was found guilty, there was no guarantee that he would receive the minimum sentences, or that he would be able to serve each sentence concurrently. In contrast, his guilty plea gave him ten years for the possession of marijuana, ten years for the firearm charge, and six months for the drug

---

[33] La. Rev. Stat. § 40:966.
[34] La. Rev. Stat. § 14:95.1
[35] La. Rev. Stat. § 40:1025.

paraphernalia charge—but allowed him to serve all sentences concurrently.[36]  Essentially, he was given one ten-year sentence.

Under the circumstances, after the state court had rejected his motions to suppress the evidence as well as his statement, Domino's choice became clearer.  Whether or not Domino was particularly happy with his limited options is of no moment, and in no way does it now render his choice illusory or his plea coerced in hindsight.  Accordingly, the state district court judge did not err in accepting the plea, nor did the state district court err in rejecting Domino's petition for post-conviction relief on the basis of ineffective assistance of counsel.  For these reasons, *habeas corpus* relief is not warranted based on this claim.

## **RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that Petitioner's federal *habeas corpus* claims be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that

---

[36] State Rec., Vol. 1 of 2, Waiver of Constitutional Rights, Plea of Guilty, 1/9/13.

such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).[37]

New Orleans, Louisiana, this 11th day of December, 2014.

DANIEL E. KNOWLES, III
**UNITED STATES MAGISTRATE JUDGE**

---

[37] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.